**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **BRENDA LYNN GEIGER; CLAUDIA SAMPEDRO; JESSICA BURCIAGA; IESHA MARIE CRESPO; JESSICA ROCKWELL; LUCY PINDER and ROSA ACOSTA,**<br><br>**PLAINTIFFS**<br><br>**v.**<br><br>**RP ENTERTAINMENT, LLC d/b/a CLUB TABU a/k/a TABU NIGHTCLUB a/k/a TABU; and KILLEEN 2007 LLC d/b/a MANGOS;**<br><br>**DEFENDANT** | Case No. _____<br><br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

Plaintiffs, BRENDA LYNN GEIGER; CLAUDIA SAMPEDRO; JESSICA BURCIAGA; IESHA MARIE CRESPO; JESSICA ROCKWELL; LUCY PINDER; and ROSA ACOSTA, ("Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against Defendants RP ENTERTAINMENT, LLC d/b/a CLUB TABU A/K/A TABU NIGHTCLUB a/k/a TABU; and KILLEEN 2007 LLC d/b/a MANGOS ("Defendants" or "TABU"), respectfully alleges as follows:

**BACKGROUND**

1.      This is an action for damages and injunctive relief relating to Defendant's misappropriation and unauthorized publication of images of Plaintiffs, who are world-renowned professional models, in order to promote its night club, RP ENTERTAINMENT, LLC d/b/a CLUB TABU a/k/a TABU NIGHTCLUB a/k/a TABU; and KILLEEN 2007 LLC d/b/a MANGOS (collectively "Tabu" or "Defendants").

2.      As detailed below, Defendant's unauthorized use of Plaintiffs' images, photos, and likenesses (collectively, "Images") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1)(A) and (B), which prohibits false or misleading use of a person's image for purposes of advertising; b) violation of Plaintiff's right to privacy, which protects a person's right to privacy and publicity; c) defamation, and; d) supplants various common law torts.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seeks an Order from this Court permanently enjoining Defendants from using her Image to promote Tabu, via any medium.

## JURISDICTION & VENUE

4.       This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs has stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1)(A) and (B).  This Court also has subject matter jurisdiction the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

5.      As set forth immediately below, Plaintiffs BRENDA LYNN GEIGER; CLAUDIA SAMPEDRO; JESSICA BURCIAGA; IESHA MARIE CRESPO; JESSICA ROCKWELL; LUCY PINDER; and ROSA ACOSTA are, and at all times relevant to this action have been, professional models.

6.      According to publicly available records, Defendant RP ENTERTAINMENT, LLC D/B/A CLUB TABU A/K/A TABU NIGHTCLUB A/K/A TABU; AND KILLEEN 2007 LLC D/B/A MANGOS is a Limited Liability Company organized and existing pursuant to the laws of the State of Texas doing business as a night club in in Killeen, Bell County, Texas under the name Club Tabu at 3310 South Fort Hood Street, Killeen, Texas 76542.

7.      Venue is proper in the United States District Court for the Western District of Texas Waco Division because Bell County is the principal place of business for all Defendants.

8.      All parties have minimum contacts with Bell County, a significant portion of the alleged causes of action arose and accrued in Bell County, Texas, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Bell County.

## PARTIES

*Plaintiffs*

9.      Plaintiff BRENDA LYNN GEIGER is an individual residing in the State of California.

10.     Plaintiff CLAUDIA SAMPEDRO is an individual residing in the State of Florida.

11.     Plaintiff JESSICA BURCIAGA is an individual residing in the State of Georgia.

12.     Plaintiff IESHA MARIE CRESPO is an individual residing in the State of Florida.

13.     Plaintiff JESSICA ROCKWELL is an individual residing in the State of California.

14.     Plaintiff LUCY PINDER is an individual residing in the United Kingdom.

15.     Plaintiff ROSA ACOSTA is an individual residing in the State of California.

*Defendants*

16.     According to publicly available records, Defendant RP ENTERTAINMENT, LLC D/B/A CLUB TABU A/K/A TABU NIGHTCLUB A/K/A TABU; AND KILLEEN 2007 LLC D/B/A MANGOS is a Limited Liability Company organized and existing pursuant to the laws of the State of Texas doing business as a night club in in Killeen, Bell County, Texas under the name Club Tabu at 3310 South Fort Hood Street, Killeen, Texas 76542.

## FACTUAL ALLEGATIONS

17.    As set forth immediately below, Plaintiffs are well-known professional models who earn their livelihood modeling and selling their identity, image and likeness (collectively "Images") to companies, magazines, and individuals for the purpose of advertising, endorsing, or promoting products and services.

18.    Tabu's misappropriated Plaintiffs' images and likenesses and repeatedly published of them in a defamatory manner for the commercial benefit of its night club.  Tabu's violations are ongoing.

19.    There is no question that Tabu or parties acting on its behalf misappropriated the images and likenesses of the Plaintiffs for the purpose of using the value of the Plaintiffs' Images for the value associated with them.   Plaintiffs are internationally known for gracing the covers of countless mainstream publications in addition to having careers in television and film.  All of the Plaintiffs are easily identifiable at a glance.  Moreover, Tabu undoubtedly received a benefit from its unauthorized use of the Plaintiffs' Images.  The Plaintiffs have suffered damages as a result of Tabu's conduct.

20.    Brenda Lynn Geiger is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as Show, Maxim and Raw, and has modeled for several product campaigns such as Primitive Clothing, where she has her own line of custom skateboard decks.

21.    Tabu misappropriated Ms. Geiger's Image and placed it on a social media and website posts for Tabu, a sexually oriented business, for the club's "Battle of the DJS" and "Sexy Saturdays" events.  The images of Ms. Geiger were deliberately positioned to imply that she was

an entertainer working at the club or that she endorsed the club.  The images were used without the permission of Ms. Geiger and are defamatory.  The images were circulated via print and via social media on many occasions by Tabu.  An example of the clubs' use of her images is attached to this Complaint as Exhibit A.

22.     Claudia Sampedro is a Cuban born model, mother and spokeswoman. Ms. Sampedro moved to Miami when she was 6 years old and at 16, was discovered by Elite models. Ms. Sampedro has appeared in many catalogues, magazine editorials and has a number of cover credits for magazines such as *Nine 5 Four, Shock, Face to Face* and *Mixed*. Ms. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Ms. Sampedro is in a Social Media Influencers top class with 1,109,989Instagram followers and a further combined 190,779 fans on Facebook and Twitter.

23.      Tabu misappropriated Ms. Sampedro's Image and placed it on a social media and website posts for Tabu, a sexually oriented business, for the club's "Flex Fridays" event.  The image of Ms. Sampedro was deliberately positioned to imply that she was an entertainer working at the club or that she endorsed the club.  The image was used without the permission of Ms. Sampedro and is defamatory on its face.  The image was circulated via print and via social media on many occasions by Tabu.  An example of the clubs' use of her image is attached to this Complaint as Exhibit B

24.     Jessica Burciaga is a model and a business owner from Orange County, California. She is of Mexican, French, and Irish descent. Ms. Burciaga began modeling in 2005 when she submitted a few photos to *Stuff Magazine*. The magazine responded by flying her out to New York for a photo shoot. After Ms. Burciaga's first photo shoot, she won *Stuff Magazine's* "Neighborhood Knockout" contest.  The prize was $5,000, a 4-page spread in the magazine, and an appearance as

a ring girl in EA Sports *Fight Night Round* 3 video game. Ms. Burciaga's popularity rose quickly and she began appearing in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine*, and many others. Ms. Burciaga was the *Playboy* Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series *The Girls Next Door*. Recently she has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. Ms. Burciaga's social media reach has surpassed 1,650,000 followers on Instagram, over 3,500,000 Facebook followers, and 187,000 followers on Twitter.

25.     Tabu misappropriated Ms. Burciaga's Image and placed it on a social media and website posts for Tabu, a sexually oriented business, for the club's "Sauced Up & Sexy" event. The image of Ms. Burciaga was deliberately positioned to imply that she was an entertainer working at the club or that she endorsed the club.  The image was used without the permission of Ms. Burciaga and is defamatory on its face.  The image was circulated via print and via social media on many occasions by Tabu.  An example of the clubs' use of her image is attached to this Complaint as Exhibit C.

26.     Iesha Marie Crespo is an American model and video star with combined social media followers of close to a million. Ms. Crespo has featured in a number of magazines and has the covers of *Models Latina* March 2015 and *Shock* magazine. Ms. Crespo has also appeared in a number of catalogues such as Raw and Uncut and appeared in a dozen music videos for artists such as Rick Ross and French Montana.

27.     Tabu misappropriated Ms. Crespo's Image and placed it on a social media and website posts for Tabu, a sexually oriented business, for the club's "Labor Day Weekend Bash". The image of Ms. Crespo was deliberately positioned to imply that she was an entertainer working

at the club or that she endorsed the club.  The image was used without the permission of Ms. Crespo and is defamatory on its face.  The image was circulated via print and via social media on many occasions by Tabu.  An example of the clubs' use of her image is attached to this Complaint as Exhibit D.

28.     Jessica Nichole Rockwell is a model and actress.  She is well known for Angry Video Game Nerd: The Movie (2014), Immigrants (2009), and A Que No Puedes! (2007).  She has also appeared on films and tv shows such as, Sons of Anarchy, Entourage, Knight Rider, Heros and she has done music videos for Nickelback and Baby Bash.  Ms Rockwell has done prints as a catalog Model for Dreamgirl lingerie, No Fear Calendar, Shift clothing.  She's modeled for Hooter's Magazine/Calendar, Extreme RC Car Magazine, and Racer X Magazine to name a few.

29.     Tabu misappropriated Ms. Rockwell's Image and placed it on a social media and website posts for Tabu, a sexually oriented business, for the club's "Labor Day Weekend Party".  The image of Ms. Rockwell was deliberately positioned to imply that she was an entertainer working at the club or that she endorsed the club.  The image was used without the permission of Ms. Rockewell and is defamatory on its face.  The image was circulated via print and via social media on many occasions by Tabu.  An example of the clubs' use of her image is attached to this Complaint as Exhibit E.

30.     Lucy Pinder is an English model, actress, host, businesswoman and one of Great Britain's most famous glamour models.  Ms. Pinder has featured in publications such as *FHM, Nuts, Loaded and the Daily Star,* and hundreds of others.  Ms. Pinder has appeared on *FHM's* list of the "100 Sexiest Women in the World" in 2005, 2006 and 2007.  Ms. Pinder was a guest columnist in *Nuts*, entitled "The Truth About Women" and appeared on the final edition of *Nuts* magazine cover.  Ms. Pinder has collaborated with major brands such as Unilever (Lynx) and

Camelot (National Lottery) and others, and on large national and international advertising campaigns. Ms. Pinder has an established and developing acting career with many TV appearances and Film credits. Ms. Pinder has appeared on shows such as *I'm Famous and Frightened*, *Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon,* and *Team and Bo!* in the USA. Ms. Pinder was also a contestant on *Celebrity Big Brother*. Ms. Pinder had starring roles in films such as *The Seventeenth Kind, Age of Kill,* and *Warrior Savitri*. Ms. Pinder works closely with a number of Wildlife charities and is involved in fundraising for 'Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue". Ms. Pinder has also worked with *Help for Heroes* appearing in the *Hots Shots* fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Ms. Pinder's own annual calendar continues to be one of the bestselling model calendars year after year and enhances Ms. Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram and Twitter.

31.    Tabu misappropriated Ms. Pinder's Image and placed it on a social media and website posts for Tabu, a sexually oriented business, for the club's "#CTX Stoplight Party".  The image of Ms. Pinder was deliberately positioned to imply that she was an entertainer working at the club or that she endorsed the club.  The image was used without the permission of Ms. Pinder and is defamatory on its face.  The image was circulated via print and via social media on many occasions by Tabu.  An example of the clubs' use of her image is attached to this Complaint as Exhibit F.

32.    Rosa Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y

Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she is nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Ms. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 36,000 Facebook followers, over 1 million Instagram followers, and over 291,000 Twitter followers.

33.     Tabu misappropriated Ms. Acosta's Image and placed it on a social media and website posts for Tabu, a sexually oriented business, for the club's "Ladies Night". The image of Ms. Acosta was deliberately positioned to imply that she was an entertainer working at the club or that she endorsed the club. The image was used without the permission of Ms. Acosta and is defamatory on its face. The image was circulated via print and via social media on many occasions by Tabu. An example of the clubs' use of her image is attached to this Complaint as Exhibit G.

34.     None of the Plaintiffs consented to Tabu's use of the images. The Plaintiffs are all talented, highly successful models who earn substantial amounts of money by promoting and protecting their images and likenesses to various clients and take great pride in their reputation in their industry. It is common knowledge that any improper or unauthorized use of their images or likenesses will substantially injure their careers.

35.     Plaintiffs' careers in the modeling industry place a high degree of value on their

good will and reputation, which is critical in order to maximize earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they choose to model.

36.     Plaintiffs' Images were misappropriated, by the Defendants in order to make it appear that they worked at, promoted, or endorsed Tabu.

37.     In the case of each and every depiction featuring Plaintiffs' Images, such appearances were false.

38.     Moreover, in each and every case, this misappropriation occurred without any Plaintiffs' knowledge, consent, or authorization and at no point did Plaintiffs ever receive any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images has caused Plaintiffs to suffer substantial damages.

39.     That we know of, Plaintiffs were depicted in social media, website, and other Internet posts in order to promote Tabu.  These posts were intentionally designed to make it appear that Plaintiffs are either night working at or members at Tabu, promoted Tabu, or endorsed the club.  In addition, each cause of action asserted in this lawsuit accrued in October of 2019 when Plaintiffs knew of the fact giving rise to the causes of action. The posting of these images was inherently undiscoverable, and the evidence was objectively verifiable.  The Discovery Rule applies to all images in this matter.

40.     No Plaintiff has ever been employed at Tabu or any other sexually-oriented business and has never (and would never) agree to sign away her Image rights to be used in any way that affiliates her with Tabu.

41.     Plaintiffs have never been hired to endorse Tabu, have received no remuneration

for Defendant's unauthorized use of their Images, and have suffered, and will continue to suffer, damages as a result of Defendant's use of their Images.

### Ownership of Images

42.     All Plaintiffs have reviewed the imagery in question and have positively identified themselves as the models depicted in the doctored internet and social media posts used by Defendant's club to market and promote the clubs.  As described more specifically for each Plaintiff above, some of the photographs used to create the night club advertisements were taken professionally, and a release was signed at the time of the photo shoot.  However, no Plaintiff ever released her Right to Privacy, Publicity, or the right to any third party to sell her image to any third party not a party to the original release without her permission.  No Plaintiff ever agreed to promote a night club via the imagery taken by Tabu.

43.     Additionally, if any release was signed, it did not give any person rights to use the photographs into perpetuity.  The industry standard varies, but a model rarely, if ever, signs a release of all rights into perpetuity for the use of her image.  Moreover, if a release was signed, it did not include a release of the Plaintiffs' publicity rights and, in fact, several of the releases specifically stated that Plaintiffs retained their right to publicity.  The right to a person's image and likeness is not copyrightable and, therefore, Plaintiffs are not asserting copyright claims.

44.     Moreover, as described more specifically for each Plaintiff above, some of the photographs were taken as "selfies" and are therefore fully owned by the individual Plaintiff or they were taken for personal use in an individual Plaintiff's portfolio in order to allow her to market herself to new clients.  In these cases, no release was signed and no copyright interest was asserted. In these cases, as above, each Plaintiff fully retained her right to publicity and privacy and in no case did any Plaintiff ever agree, nor did any third party hold the right to agree on her behalf, that

Defendants could use her image and likeness in order to market, promote, or endorse their night clubs.  Based on these rights, Plaintiffs assert the Causes of Action described below.

***Defendant's Business***

45.     Upon information and belief, RP ENTERTAINMENT, LLC D/B/A CLUB TABU A/K/A TABU NIGHTCLUB A/K/A TABU; AND KILLEEN 2007 LLC D/B/A MANGOS operates a night club under the name Tabu that engages in the business of hosting events in a sexually charged environment where women disrobe and dance among patrons while alcohol is served.  These events are promoted via websites and social media accounts on a worldwide basis.

46.     Tabu, does this for its own commercial and financial benefit.

47.     Tabu has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that Plaintiffs either worked as entertainers at Tabu, promoted Tabu, or endorsed Tabu.

48.     Tabu used Plaintiffs' Image, and created the false impression that they worked at or endorsed Tabu in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

49.     As Tabu was at all times aware, at no point have Plaintiffs ever been affiliated with or employed by Tabu, and at no point have Plaintiffs ever endorsed Tabu.

50.     All of Tabu's activities, including its misappropriation of Plaintiffs' Images, and publication of them, were done without the knowledge or consent of Plaintiffs, and Tabu did not compensate Plaintiffs for its use of their Images.

51.     As such, Plaintiffs have never received any benefit for Tabu's use of their Images.

**Standard Business Practices in the Modeling Industry**

52.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

53.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the Image are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

**Defendant's Misappropriation of Plaintiffs' Images**

54.     As detailed above, Defendants knowingly, and without the prior consent of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Tabu, by and through the use of internet posts, social media posts, and the creation and distribution of collateral materials such as flyers, posters, and cards.

55.     Defendants showcased Plaintiffs' Images on the Tabu materials in order to create the false impression that Plaintiffs worked at Tabu or endorsed the club.

56.     Defendants did so in order to attract clientele to Tabu, promote Tabu, and thereby generate revenue for Defendants.

57.     Defendants were aware that, by using Plaintiffs' Image, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential

customers that Plaintiffs worked at and/or endorsed Tabu.

58.     Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their reputation, character, and current career.  This is especially so insofar as each of Plaintiffs' Images have been associated with a night club, and the implication of Defendant's use of Plaintiffs' Images is that she works at, is a member of, or endorses the club.

59.     At no point was Plaintiffs ever affiliated with Tabu or Defendants.

60.     Plaintiffs' Images were used without their consent.

61.     At no point were Plaintiffs ever contacted by Defendants, or any representative of any of the Defendants, to request the use of Plaintiffs' Images.

62.     No Defendants ever obtained, either directly or indirectly, permission to use Plaintiffs' Images.

63.     No Defendants ever paid any Plaintiffs for use of their Images on any promotional materials, including the Tabu billboards, social media, Internet, or other promotional materials.

64.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive the Plaintiffs of their right to determine the use their Images.

65.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.: False Endorsement)

66.      Plaintiffs hereby repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

67.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

68.     Defendants used Plaintiffs' Image, *inter alia*, in order to create the false impression with the public that Plaintiffs either worked at or were members of the Tabu, or endorsed the sexually-oriented business.

69.     This was done to promote and attract clientele to Tabu, and thereby generate revenue for the Defendants.

70.     Thus, this was done in furtherance of Defendant's commercial benefit.

71.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed, Tabu, Defendants nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Tabu.

72.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Tabu.

73.     Upon information and belief, Defendant's use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Tabu, and the goods and services provided by Tabu.

74.     Due to Defendant's unauthorized use of Plaintiffs' Images  in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial, but in all events, not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

75.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Plaintiffs from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial

activities . . .".  15 U.S.C. §1125(a)(1)(B).

76.     Defendants used Plaintiffs' images, likenesses and/or identities as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Tabu, endorsed Defendant's business and activities, and/or consented to or authorized Defendants to use their Images in order to advertise, promote, and market Defendant's business, Tabu, and/or Tabu's events and activities.

77.     Defendant's use of Plaintiffs' images, likenesses and/or identities to advertise, promote and market Defendant's business, Tabu, and/or Tabu's events and activities as described in this Complaint was false and misleading.

78.     Defendant's unauthorized use of Plaintiffs' images, likenesses and/or identities as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or was otherwise affiliated with Tabu, endorsed Defendant's business, Tabu or Tabu's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendants business or Tabu's events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

79.     Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Tabu, as to the general quality of attendees and participants of Tabu and in its events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Tabu, endorsed Defendant's business, Tabu or Tabu's events or activities, or consented to or authorized Defendant's usage of their images in order to advertise, promote, and market Defendant's business or Tabu's events and activities.

80.     Upon information and belief, Defendant's false advertising described above did, in

fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or were otherwise affiliated with Tabu, endorsed Defendant's business, Tabu or Tabu's events and activities, or consented to or authorized Defendant's usage of their Images in order to advertise, promote, and market Defendant's business or Tabu's events and activities.

81.     Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Tabu, visit Tabu, and participate in events at Tabu and had a material effect and impact on the decision of members and prospective members and participants to join Tabu, visit Tabu and take part in the events at Tabu.

82.     Defendant's advertisements, promotions and marketing of Tabu and events at Tabu occur in and are targeted to interstate commerce.  Specifically, Defendants promotes its business and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally uses the World Wide Web, social media, and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Tabu events.

83.     Defendant's unauthorized use of Plaintiffs' images, likenesses and/or identities as described herein was designed to benefit Defendant's business interests by, among other things, promoting Tabu and its activities and attracting clientele to Tabu.

84.     Defendants knew or should have known that its unauthorized use of Plaintiffs' images, likenesses and/or identities would cause consumer confusion as described in this Complaint.

85.     Defendant's unauthorized use of Plaintiffs' images, likenesses and/or identities as described herein violates 15 U.S.C. §1125(a) and was wrongful.

86.     Defendant's wrongful conduct as described herein was willful.

87.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

88.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

89.    The method and manner in which Defendants used the Images of Plaintiffs further evinces that Defendants were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their Images to advertise Defendant's business.

90.    Defendants has caused irreparable harm to Plaintiffs, their reputations and brands by attributing to Plaintiffs the night club lifestyle and activities at Tabu.

91.    Defendant's unauthorized use of Plaintiffs' images, likenesses and/or identities directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

92.    Plaintiffs respectfully request that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**THIRD CAUSE OF ACTION**
**(Violation of Texas Right to Privacy)**

93.    Plaintiffs hereby repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

94.    All Plaintiffs have reviewed the imagery in question and have positively identified themselves as the models depicted in the doctored Internet and social media posts used by Defendants to market and promote the Tabu.  As described more specifically for each Plaintiff

- 18 -

above, some of the photographs used to create the night club advertisements were taken professionally and a release was signed at the time of the photo shoot.  However, no Plaintiff ever released her Right to Privacy, Publicity, or the right to any third party to sell her image to any third-party not a party to the original release without her permission, especially a night club.

95.    Moreover, if a release was signed, it did not include a release of the Plaintiffs' publicity rights and, in fact, several of the releases specifically stated that Plaintiffs retained their rights to publicity.  The right to a person's image and likeness is not copyrightable and, therefore, Plaintiffs are not asserting copyright claims.

96.    Moreover, as described more specifically for each Plaintiff above, some of the photographs were taken as "selfies" and are therefore fully owned by the individual Plaintiff or they were taken for personal use in an individual Plaintiff's portfolio in order to allow her to market herself to new clients.  In these cases, no release was signed and no copyright interest was asserted. In these cases, as above, each Plaintiff fully retained her right to publicity and privacy and in no case did any Plaintiff ever agree, nor did any third party hold the right to agree on her behalf, that Defendant could use her image and likeness in order to market, promote, or endorse its night club. Based on these rights, Plaintiffs assert the Causes of Action described below.

97.    As set forth herein, Defendants have violated by invading Plaintiffs' privacy, misappropriating their likenesses, and publishing on the Tabu materials the altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at Tabu, or endorsed the night club.  Defendants misappropriated the Plaintiffs' Images for the value associated with them and for their own benefit.  All of the images misappropriated by Defendant were republished many times in different formats to substantially different audiences on many occasions.  Each publication is a new violation of Plaintiffs' rights.    The appropriation was neither incidental nor for a

newsworthy purpose; rather, the images were misappropriated by Defendant, or third parties acting on their behalf, for their own benefit because of the commercial standing, reputation, and other values associated with the Plaintiffs' Images.

98.     At all relevant times, the Tabu internet, social media, and collateral materials were used by Defendants for advertising and trade purposes.

99.     The Tabu internet, social media, and collateral materials were designed to attract business to Tabu and generate revenue for Defendants.

100.    Upon information and belief, Defendant's use of Plaintiffs' Images did in fact attract clientele and generate business for Tabu.

101.    At no point did any Defendants ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Images on the Tabu internet, social media, and collateral materials were or anywhere else.

102.    Defendants were at all relevant times aware that they never received any Plaintiffs permission or consent to use their Images on any website or social media account, or on any other medium in order to promote Tabu.

103.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

104.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

105.    Due to Defendant's violation of Plaintiffs' rights of privacy and publicity under IRPA, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

106.    In addition, Plaintiffs hereby requests an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

107.     In addition, Plaintiffs hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of her statutory rights to privacy and publicity.

### FOURTH CAUSE OF ACTION
**(Defamation)**

108.     Plaintiffs hereby repeat and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

109.     As detailed throughout this Complaint, Defendants has published altered Images of Plaintiffs in order to promote Tabu to the general public and potential clientele.

110.     Defendant's publication of said Image constitutes a representation that Plaintiffs were either employed at Tabu, endorsed Tabu, or that she had some affiliation with Tabu.

111.     None of these representations were true.

112.     In publishing Plaintiffs' altered Images, it was Defendant's intention to create a false impression to the general public that Plaintiffs were employees of, members of Tabu, or endorsed the night club.

113.     Defendants were at least negligent in publishing Plaintiffs' Images  because it knew, or should have known, that Plaintiffs were not employed by Tabu, had no affiliation with Tabu, had not consented to the use of her Image, and had not been compensated for the use of her Image.

114.     In the alternative, Defendants published the Image of Plaintiffs with actual malice because it knew that Plaintiffs were not employed by Tabu, had no affiliation with Tabu, had not consented to the use of her Image, and had not been compensated for the use of her Image.

115.     Despite Defendant's knowledge and awareness of these facts, it nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for itself.

116.    Defendant's publication of Plaintiffs' Images  constitutes defamation under Texas law because said publication falsely accuses Plaintiffs of having acted in a manner – *i.e.*, working for, a member of, and/or endorsing a night club - which would subject each Plaintiffs to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiffs of confidence and friendly intercourse in society.

117.    Defendant's publication of Plaintiffs' Images likewise constitutes defamation *per se* under Texas law because said publication would tend to injure each Plaintiffs in her trade, business, and profession.

118.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was an entertainer and/or promoting a night club, an inference which Defendant's publication of the Image support.

119.    Defendant's publication of Plaintiffs' Images likewise constitutes defamation *per se* under Texas law because, insofar as said publication falsely portrays each of the Plaintiffs as an entertainer, it imputes unchastity to them.

120.    Defendant's publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand ($75,000), exclusive of punitive and exemplary damages.

## FIFTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

121.    Plaintiffs hereby repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

122.    Upon information and belief, Defendants were negligent in their failure to

promulgate policies and procedures concerning the misappropriation of the Images of Plaintiffs that were used on their websites and social media accounts.

123.    Said failure was the proximate cause of the harm Plaintiffs suffered when their Images were published without their authorization.

124.    In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Texas law, were not violated.

125.    The publication of the Plaintiffs' images was ongoing.  Defendants failed to relinquish all right of control, title, and interest in their advertisements.  The images of Plaintiffs were published and reutilized on the Defendants' social media and internet accounts for years (and indeed to the present day) after the original publication. In other words, these images were published and re-published by Defendants continually for years and have not been removed as of the filing of this lawsuit.

126.    All of these posts contain new comments or hashtags and were reposted on the particular dates in question.  The images of Plaintiffs were altered and re-posted with new content. Each re-publication establishes a new statute of limitations for that image.

127.    All of the posts contain multiple "Likes," which, by definition, evidence the fact that each time an image was posted or reposted by Defendant, a substantially new audience was exposed to the image.  This precludes the application of the Single Publication Rule in that this case is about multiple publications of Plaintiffs' images and not one use that can simply be accessed by persons visiting the social media cites.

128.    Each new publication of Plaintiffs' images by Defendant constitutes a separate publication.  Each republication is a separate act of negligence that causes a continuing injury to Plaintiffs.  Each publication constitutes a continuous tort.  To date, Defendant continues to maintain the imagery of the Plaintiffs on its social media accounts.  Defendants have engaged and continue to engage in continued injury-producing conduct.

129.    In addition, Defendants had a duty to refrain from appropriating the Image of those with whom it had not contracted and had not paid.

130.    Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

131.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**ATTORNEYS' FEES PURSUANT TO TEX. CIV. PRAC. & REM CODE § 38.001**

132.    Plaintiffs are professional models who earn a living by lending their images to businesses who seek to use those images to sell a product or service.  Those clients bargain with Plaintiffs for the use of the image in exchange for remuneration.

133.    In this case, Defendants, in essence, contracted with the Plaintiffs for the extended use of their images to promote or endorse their businesses.  Plaintiffs have essentially been forced to perform labor for Defendants against their will and the use of their images in Defendants' social media post constitutes services rendered by Plaintiffs to Defendants.

134.    In addition to the other damages sustained by Plaintiffs, Plaintiffs are entitled to recover reasonable attorney's fees, in addition to the amount of their damages and costs pursuant

to Tex. Civ. Prac. & Rem. Code § 38.001(1) and § 38.001(2) and seek those amounts in this lawsuit.

## DEMAND FOR JURY TRIAL

135.    Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), relating to Plaintiffs' first through fifth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: Austin, Texas
February 12, 2021

Respectfully submitted,

*/s/Joseph N. Casas*

Joseph N. Casas
**THE CASAS LAW FIRM, P.C.**
11844 Bandera Road #509
Helotes, TX 78023
855-267-4457
joseph@talentrights.law

and

Dennis C. Postiglione[1]
State Bar No. 24041711

**THE CASAS LAW FIRM, P.C.**
3801 North Capital of Texas Highway,
Suite E240, #445
Austin, Texas 78746
(512) 806-7699 Office
(855) 220-9626 Fax
dennis@talentrights.law

**ATTORNEYS FOR PLAINTIFFS**

---

[1] Pro Hac Vice Application Pending